8825

AYER v. HUGHES.

(81 S. E. 510.)

PRINCIPAL AND SURETY. QUESTION FOR JURY. PARTITION. MARSHALING ASSETS. LIENS. PRIORITIES.

1. Suretyship is a mixed question of law and fact, evidence being admissible as to the circumstances under which the alleged surety signed to enable the Court to determine whether the relation exists.
2. In an action for partition, in which it is sought to subject an interest descended to heirs to the *pro tanto* payment of a mortgage executed by the ancestor, evidence *held* not to show that the ancestor signed the mortgage as surety for certain persons, but to show that she signed it only for her son.
3. The release by a mortgagee or payee of one of the several makers of a bond and mortgage, or the material alteration of the bond by

the payee, will release a surety thereon, where he did not consent thereto.

4. A surety is not discharged by the release to and for him, or with his consent, of a person liable on the instrument.

5. A surety for the payment of a mortgage debt would be only liable for one-eighth of the debt where the principal only had a one-eighth interest in the mortgaged property, though there were only five of the mortgagors, including such surety.

6. The property of one of several mortgagors will not be applied to the payment of the mortgage debt before the property of the surety of another of the mortgagors, where the firstmentioned mortgagor has not imposed such a prior liability upon his property, by contract or otherwise.

Before SPAIN, J., Bamberg, March, 1913.    Modified.

Action for partition of lands brought by Carrie Ayer and others against W. F. Hughes and others. From judgment, plaintiffs and a part of the defendants appeal.

*Messrs. Carter & Carter,* for appellants, cite: 44 S. C. 378; 27 A. & E. Enc. of L. (2d ed.) 434; 1 McC. Ch. 451-452; 53 S. C. 24; 15 S. C. 581. *Answer of infant defendants:* 27 S. C. 365; 61 S. C. 572.

*Mr. Francis F. Carroll,* for respondent, cites: 27 S. C. 272; 13 S. C. 513; 61 S. C. 538; 1 A. & E. Enc. of L. (2d ed.) 371, 337, 339. *Irrelevant evidence:* 69 S. C. 360; 74 S. C. 232; 84 S. C. 117. *Statements explained:* 30 S. C. 578; 15 S. C. 587; 41 S. E. 924. *Practice:* 32 S. C. 351.

April 23, 1914.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

This action is for partition. About that right there is no issue. Partition has been actually effected by formal decree, and the issue now made was reserved for further consideration. The only primary issue now is the subjection of that one-eleventh interest, formerly owned by Mrs. Sarah H.

Ayer and now descended to her six children, to the *pro tanto* payment of a bond and mortgage executed by Sarah H. Ayer and her four brothers to F. M. Bamberg. The master held that such interest was not liable to any part of the mortgage; the Circuit Court held that such interest was liable in part to the mortgage; and the said six children appeal therefrom.

There are many exceptions, 13 in all; but they do not nearly raise half that many issues.

The first seven exceptions make practically one issue, and that is as to the character of Sarah H. Ayer's obligation when she signed the bond and mortgage. The appellants contend that it was that of surety for the other signers, and for proof they rely on the declaration of F. M. Bamberg and the tacit admission of Paul Kistler Hughes. Granting that both these witnesses regarded Mrs. Ayer as surety and said so, that would not settle the fact. Suretyship is a mixed question of law and of fact; the witnesses may say under what circumstances the signing was done, and the law declares the legal character of such signing.

The witnesses have detailed these as the circumstances: That this 500 acres of land, the value of which does not appear, was owned by 11 persons, in common and in equal shares; that four of the Hughes owners, to wit, William, Richard, Paul, and James, and the son of another owner, to wit, T. J. Ayer, the son of Sarah H. Ayer, embarked in a sawmilling business; that these five owners of five-elevenths of the land, in order to raise a fund to launch the business, borrowed $1,800 from Gen. Bamberg, to evidence which they made him a joint bond, and to secure its payment executed to him a mortgage on their five-elevenths interest in the 500 acres, and Paul included in the same instrument a two-acre lot in the town of Bamberg; that the sawmill business was owned by the said four Hughes boys and their nephew, T. J. Ayer, William, Richard and Paul owning a

one-fourth each, and James and T. J. Ayer one-fourth together; that 18 months after the mortgage was made, and while he still owned it, of course, Gen. Bamberg, "in consideration of the fact that Mrs. Ayer is only a surety on a certain bond and mortgage * * * and in further consideration of part of the said debt being paid * * * released Mrs. Ayer from all personal liability of said bond, holding the mortgage only against her interest in the mortgaged premises;" that Gen. Bamberg thereafter assigned the bond and mortgage to John H. Cope, and Cope thereafter assigned them to Paul Kistler Hughes, who now sets them up *pro tanto* against the one-eleventh interest formerly owned by Mrs. Ayer and now owned by her six children; that the other three makers of the bond and mortgage have contributed the payment of their proportion of the mortgage debt.

The fact of suretyship and its legal consequences were not pleaded, but the issue was made by the testimony; it may perhaps be embraced by the plea of no consideration; it was considered by the Court below, and will be considered now.

The only deduction from the testimony is that the boy, T. J. Ayer, bargained for a one-eighth interest in the sawmill business, and his mother in effect, borrowed the money for him. The share of each of the 11 owners of the land was worth at least $500; there is no proof of the value of the land, but it may be assumed to have been more than $5,000. Thus valued, the mortgage debt on these five interests, incumbered by the mortgage, was $360 for each interest. The interest, therefore, of each one of the four Hughes boys was ample security for the debt due by them. There was no need for Mrs. Ayer to be surety for them; when she signed, it was for her son, T. J. Ayer, and no one else; he owned no land. There is not a scintilla of testimony that she signed for the Hughes boys. Mrs. Ayer is dead, but T. J. Ayer is alive, and is a party to this suit,

and he did not deny that his mother signed for him alone. If, therefore, Mrs. Ayer be considered a surety, it was for her son, T. J. Ayer; and, if that be so, she is yet liable to Paul, who owns the bond and mortgage. She is not discharged by Bamberg's release, as contended in the ninth exception. The release was from personal liability, not from the lien of the mortgage.

The release by a mortgagee or payee, or one of the several makers of a bond and mortgage, or the material alteration of the instrument by the payee, will release a surety thereon.

But not so where the release is to and for the surety, and with the surety's consent, as it must have been in this instance. 32 Cyc. 159.

To revert to the proposition laid down, *supra,* the liability of Mrs. Ayer if she signed as surety for her son: In that event she did not stand in any relationship to Paul Kistler Hughes except that of joint and principal maker of a bond and mortgage; Paul Kistler Hughes has paid his *pro rata* of the debt, and the other makers have paid their *pro rata* of the debt; why should Mrs. Ayer's estate not pay its *pro rata* of the debt? If Mrs. Ayer's estate is required now to pay, it may go upon T. J. Ayer for reimbursement, for she was his surety; but her estate has no such claim to go upon the other signers with her, certainly not on Paul; and there is no other suggested ground for her relief. If, then, the estate of Mrs. Ayer be liable on the bond and mortgage, and it is, for what proportion of that debt is it liable? The Circuit Court simply held the estate liable "to the extent of her proportionate share of the mortgage debt," without indicating whether that proportion was one-fifth, as there were five obligors, or less. That issue is made by the tenth, eleventh and thirteenth exceptions.

The contention of appellant is: (1) That in no event is the estate liable for more than one-eighth of the original mortgage debt, for the reason that T. J. Ayer had only one-

eighth interest in the sawmill business; (2) that the liability of the estate ought to be decreased by that of another joint obligor, Olivia E. Hughes, who was life tenant of the land, and now dead; (3) that the other Hughes obligors, William, Richard, and James, did not contribute their share of the debt; and (4) that the town lot of Paul ought to be first applied to the debt before the estate of Sarah is held liable.

These contentions will be considered in the inverse order. Paul Hughes has done nothing, by contract or otherwise, which requires that his own town lot shall relieve his joint obligor, Mrs. Ayer. The testimony proves that the three Hughes obligors, William, Richard, and James, all paid to Paul by conveyances their share of the bond. The master so found. The sixth obligor, Mrs. Olivia Hughes, was mother to the others, and life tenant of the land. She is dead. She may be considered out of the transaction. The testimony shows nothing to charge or to relieve her. Finally, as betwixt the obligors (excepting her mother), Mrs. Ayer became bound on the face of the bond to pay one-fifth of it. She was surety only for her son; she was certainly not surety for Paul. Mrs. Ayer's estate is therefore liable to contribute to Paul out of the partition money, one-eighth of the bond and mortgage.

The twelfth exception states no new issue.

The judgment of the Circuit Court is therefore modified in the respect last mentioned.